**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| M.Q.T.D., | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Case No. 4:26-cv-128-CDL-ALS |
| | : | |
| Warden, STEWART DETENTION | : | |
| CENTER, *et al.*, | : | |
| | : | |
| Respondents. | : | |

_____

**REPORT AND RECOMMENDATION**

Pending before the Court is Respondents' Motion to Dismiss Petitioner's application for habeas corpus relief. (ECF Nos. 10, 1). For the reasons explained below, it is recommended that Respondents' Motion to Dismiss be granted.

**BACKGROUND**

Petitioner, a native and citizen of Vietnam, was admitted as an immigrant into the United States on October 26, 1994. (ECF Nos. 10-1, at 1 (citing ECF No. 10-2); 10-4, at 1). On July 6, 2000, he was convicted in the United States District Court for the Northern District of Georgia "for the offense of Racketeer Influenced and Corrupt Organizations Conspiracy[,]" and he was sentenced to serve forty-six (46) months in a federal penitentiary. (ECF No. 10-1, at 1 (citing ECF No. 10-3)). On September 5, 2002, Petitioner was served with a Notice to Appear that charged him with being removable under Immigration and Nationality Act section 237(a)(2)(A)(iii) due to his conviction of an aggravated felony. *Id.* (citing ECF No. 10-4).

On September 13, 2002, Petitioner entered the custody of Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO"). (ECF No.

10-1, at 1). On October 22, 2002, an Immigration Judge ordered Petitioner removed to Vietnam. *Id.* (citing ECF No. 10-5). Any appeal was waived. *Id.* "On May 29, 2003, Petitioner was released from ICE custody under an Order of Supervision." *Id.* (citing ECF No. 10-6).

On October 14, 2025, Petitioner was arrested at "the Atlanta ICE/ERO office to execute the Order of Removal." *Id.* at 2 (citing ECF No. 10-7). On December 16, 2025, ICE/ERO submitted Petitioner's documents to ERO HQ. *Id.* On February 12, 2026, ICE/ERO resubmitted travel document requests, and ICE/ERO revoked Petitioner's Order of Supervision ("OSUP"). *Id.* (citing ECF No. 10-8). "ICE/ERO intends to effectuate Petitioner's removal once travel documents are received." *Id.*

On January 22, 2026, Petitioner filed a counseled application for habeas relief. (ECF No. 1). On February 13, 2026, Respondents filed a Motion to Dismiss the habeas application, to which Petitioner filed a timely Reply. (ECF Nos. 10, 14). Briefing has concluded and Respondents' Motion to Dismiss is ripe for a recommendation.

## DISCUSSION

Respondents move to dismiss Petitioner's habeas application, contending that 1) Petitioner cannot state a claim under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his claim is premature, and 2) even if the claim is not premature, Petitioner is not entitled to release under *Zadvydas*. (ECF No. 10, at 5-12). Respondents also note that Petitioner challenges his detention because he had previously been released under an OSUP, but Respondents argue that 1) the Court lacks jurisdiction to consider any such claim, and 2) in the alternative, that claim lacks merit. *Id.* at 12-24. The Court agrees that Petitioner's application is premature, and it recommends that Respondents' Motion to Dismiss be

granted on that basis and that Petitioner's habeas application be dismissed. As a result, the Court does not address the parties' additional arguments.

## Petitioner's Habeas Application is Premature

Because a removal order has been entered, Petitioner's detention is governed by 8 U.S.C. § 1231(a). Under § 1231(a), "when an alien is ordered removed," the Attorney General "shall" remove the alien within ninety days. 8 U.S.C. § 1231(a)(1)(A). This removal period begins to run on the latest of:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B). Detention during the ninety-day removal period is mandatory. *Id.* § 1231(a)(2)(A). Moreover, § 1231(a) allows for the continued detention of certain categories of aliens beyond this ninety-day removal period. It provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in [§ 1231(a)(3)].

*Id.* § 1231(a)(6).[1]

By its explicit terms, § 1231(a)(6) does not limit the length of detention for an alien detained under that section. In *Zadvydas*, however, the Supreme Court of the United States applied the doctrine of constitutional avoidance to "read an implicit limitation into the statute[.]" 533 U.S. at 689. The Supreme Court held that § 1231(a)(6) authorizes post-

---

[1] Petitioner falls into this category by virtue of his aggravated felony convictions. 8 U.S.C. § 1227(a)(2)(A)(iii).

3

removal-order detention only for a period "reasonably necessary" to accomplish the alien's removal from the United States. *Id.* at 699-700. The Court recognized six (6) months as a presumptively reasonable period of time to allow the government to accomplish such removal. *Id.* at 701. The United States Court of Appeals for the Eleventh Circuit has explained that to be entitled to release under *Zadvydas*, an alien must show: "(1) that the six-month period, which commences at the beginning of the statutory removal period, has expired when the § 2241 petition is filed; and (2) evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009) (citation and quotation marks omitted); *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("[I]n order to state a claim under *Zadvydas* the alien . . . must show post-removal order detention in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.").

Respondents argue that Petitioner's habeas application should be dismissed as premature because he has not shown post-removal order detention in excess of six (6) months when he filed his habeas application as required by *Zadvydas*. (ECF No. 10, at 5-8). Respondents' argument is premised on Petitioner's removal period beginning on October 14, 2025, when he was most recently taken into custody by ICE's ERO. *Id.* at 5. If this is the appropriate date to commence the removal period, Petitioner's habeas application – filed by counsel on January 22, 2026 – is approximately three (3) months premature. Thus, if October 14, 2025 is the beginning point, Petitioner cannot make the six-month post-removal order detention showing required by *Akinwale* and *Zadvydas*, and his Petition for habeas relief should be dismissed without prejudice as premature.

However, Petitioner argues that he should be given credit for the approximately six (6) months that he was in ICE custody after his removal order became final on October 22, 2002, when he was then released on May 29, 2003. (ECF No. 14, at 15-18). As has been noted previously in this District, "there is support for this argument – in other districts." *T.C.T. v. Warden, Stewart Det. Ctr.*, No. 4:25-cv-373-CDL-CHW, 2025 WL 4648417, at \*3 (M.D. Ga. Dec. 22, 2025) (citations omitted), *adopted on de novo review in relevant part by* 2026 WL 493471 (M.D. Ga. Feb. 23, 2026). In this District, however, the precedent establishes that – absent "bad faith" due to release and re-detention to restart the *Zadvydas* clock – the relevant detention period commences on the date on which Petitioner was detained following a return to custody. *Id.* Here, the record does not reflect re-detention in bad faith because Petitioner was first released from ICE custody in 2003. He was not re-detained until 2025 – over twenty-two (22) years after he was first released from custody. *Id.* at \*4 (finding no bad faith where petitioner was re-detained after twenty-five (25) years and concluding that "it is not reasonable that a detention period from twenty-five years ago should be counted towards his detention today."). Thus, the Court finds that October 14, 2025 is the relevant detention commencement date, and as a result, the Court concludes Petitioner has failed to show detention in excess of six (6) months as required by *Zadvydas*, and his claim is premature.

Because the Court finds that Petitioner's application for habeas relief is premature and it recommends that Respondents' Motion to Dismiss be granted, the Court does not consider the parties' other arguments.

## CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Respondents' Motion to Dismiss (ECF No. 10) be **GRANTED** and Petitioner's application for habeas relief (ECF

No. 1) be **DISMISSED WITHOUT PREJUDICE**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. Any objection should be no longer than TWENTY (20) PAGES in length. *See* M.D. Ga. L.R. 7.4. The district judge shall make a *de novo* determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO **RECOMMENDED**, this 16th day of April, 2026.

s/ **ALFREDA L. SHEPPARD**
UNITED STATES MAGISTRATE JUDGE